## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **EDWIN J. PRADO GALARZA**<br>Plaintiff<br><br>v.<br><br>**EXAMSOFT WORLDWIDE, INC.,**<br>**INSURER A**<br>Defendants | Case No. |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, the plaintiff Edwin J. Prado Galarza (hereinafter "Mr. Prado" or "the plaintiff"), represented by the undersigned counsel and respectfully states, alleges, and requests as follows:

### JURISDICTION AND VENUE

1. The Honorable Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is wholly between citizens of different states.

2. The Honorable Court has personal jurisdiction over the known defendant because it is a Delaware corporation authorized to conduct business in the State of Florida and has conducted business within the State of Florida.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the plaintiff's claims occurred within this judicial district.

### DEMAND FOR JURY TRIAL

4. The plaintiff invokes his Seventh Amendment right to a jury trial on all issues triable by a jury as the value in controversy exceeds $20. *See* U.S. Const. amend. VII ("In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."); *see also* Fed. R. Civ. P. 38.

### THE PARTIES

5. The plaintiff, Edwin J. Prado Galarza, is a resident and citizen of Puerto Rico. His postal address is as follows: 403 Calle Del Parque, Suite 8, San Juan, Puerto Rico 00912.

6. The defendant, ExamSoft Worldwide, Inc. (hereinafter "ExamSoft"), is a corporation existing under the laws of the State of Delaware with its principal place of business located at 5001 LBJ Freeway, Suite 700, Dallas, Texas 75244.

7. ExamSoft regularly conducts business throughout this district, the State of Florida, and the United States generally.

8. The unknown defendant, Insurer A, is an insurance company with the capacity to sue and be sued that issued a policy with insurance coverage for ExamSoft and whose name and principal place of business is currently unknown to the plaintiff.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

9. Mr. Prado is a well-known attorney in Puerto Rico and has practiced law for twenty-eight (28) years primarily in New York and Puerto Rico, and more recently in the State of Florida. He is the managing partner of Prado, Núñez and Associates, C.S.P. and has worked as an Associate Professor at the University of Puerto Rico for twenty-eight (28) years. He is currently the President of the Puerto Rico Bar Association for the State of Florida. Mr. Prado has represented high-profile clients in the entertainment industry and his name and reputation have been highlighted by the media and legal peers.

10. Mr. Prado paid ExamSoft money to download and use their software to take the essay portion of the Florida Bar's admissions test administered in July of 2017 in Tampa, Florida.

11. Mr. Prado completed the essay portion of the examination within the 3-hour time frame permitted by the Florida Board of Bar Examiners (hereinafter "FBE").

12. On August 11, 2017, Mr. Prado received a letter from the FBE notifying him that ExamSoft had notified it that the recorded time on Mr. Prado's exam platform exceeded the time limit by 1 minute and 4 seconds.

13. The FBE requested an explanation for the alleged transgression and notified Mr. Prado that his grades could be impounded pending the result of the investigation pursuant to Rule 4-62.1 of the Rules of the Supreme Court Relating to Admissions to The Bar.

14. Mr. Prado provided a timely response to the accusation and categorically denied the suggestion that he had exceeded the time allotted on the essay portion of the examination.

15. On September 28, 2017, the FBE provided Mr. Prado with a copy of the ExamSoft records that were referenced in its August 11, 2017, letter and further notified Mr. Prado that the ExamSoft activity log showed that he added 42 characters on the essay portion of the examination after the time to complete the examination had elapsed. The FBE letter further directed Mr. Prado to appear at the FBE's October 2017 hearing.

16. The allegations raised by the FBE based on the ExamSoft records caused Mr. Prado grave consternation despite his categorical denial of any impropriety or unethical conduct on his part.

17. The mere allegation of dishonesty in an examination of this nature entails serious predicaments for the applicant that could derail attempts to obtain licenses to practice law in Florida and other states and possibly lead to disciplinary action in those jurisdictions where the applicant is already licensed.

18. The essence of the allegations suggested by the ExamSoft activity records was that Mr. Prado, who has enjoyed an unblemished legal career for the past 28 years, cheated on the Florida Bar Examination.

19. The frivolous allegations leveled against Mr. Prado as a result of the ExamSoft records put his professional certifications, professional career, and reputation in the legal community and with his clients in jeopardy.

20. As previously alluded to, Mr. Prado has been an associate professor for the University of Puerto Rico for 28 years and will be retiring soon. Yet, the accusation by ExamSoft equates to academic dishonesty that would have resulted in his firing.

21. As a result of the flawed report issued by ExamSoft, Mr. Prado was precluded from having access to his examination results and was required to undergo an investigation that would focus on the allegation that he cheated on the examination by exceeding the applicable time constraints for the essay portion.

22. In mounting his defense against these unfounded allegations, Mr. Prado spent more than $25,000 in legal and expert-witness fees, among other expenses, to prepare and try his case in front of the Ethics Committee of the Florida Bar.

23. Mr. Prado retained Eric Chuang, the Managing Director of BDO in charge of Cyber Incident Response and a former FBI agent with expertise in Computer Forensics (hereinafter "the expert") who prepared an expert report. Exhibit 1.

24. In order to prepare the report, the expert examined the laptop computer Mr. Prado used for the exam. *See Id.* at p. 2. The laptop computer ran on a Windows operating system.

25. The expert found that the ExamSoft software caused two crashes of one of the laptop's native software programs "that manages multiple Windows processes and services including network connections and Windows Time Service. Once [said program] crashes, Windows become unstable. That instability can cause other components to fail in unpredictable manners. Once [said program] crashes, information from the System time and Clock cannot be relied upon." *Id.*

26. "ExamSoft has a 'Time Limit' enforcement function built in, but that function was set to be OFF by default /test administrator. That function should be set to 'ON' for timed tests such as Bar Exam. This setting is ONLY configurable by the Test Administrator, not by the user." *Id.* (emphasis in original).

27. As it turns out, the computer went into "suspend mode" on two separate occasions at the exact same times that the program crashed. *Id.* at pp. 2-3. The ExamSoft software "was the most likely cause as it was active right before the . . . crash." *Id.*

28. "Because the Suspend/Sleep function is heavily dependent on the system time/clock, the accuracy of the system time/clock is no longer valid as evidenced by the random triggering of system Suspend/Sleep." *Id.* at p. 3.

29. "Given what the logs indicate, it is highly probable that the some combination of ExamSoft algorithms and/or use of system resources (time API, system interrupt, etc.) are flawed or faulty, or misconfigured." *Id.*

30. As it was ExamSoft that created the system instability and caused Mr. Prado's computer to become unstable, it was impossible to guarantee the correct amount

of time spent by Mr. Prado to complete the exam by relying on the software. *Id.* at p. 6.

31. The expert report attributed the conclusions regarding the alleged time transgression to a system suspension that occurred in the ExamSoft system.

32. There was no other evidence in existence or relied upon by ExamSoft, the FBE, or the Ethics Committee of the Florida Bar that would tend to suggest that Mr. Prado may have cheated on the exam.

33. Despite there being thousands of other test takers and dozens of proctors present during this examination, there is not a single person who witnessed Mr. Prado cheat on the exam.

34. Moreover, it would be illogical for Mr. Prado to jeopardize his already prominent career and reputation over an extra minute on a 2-day exam.

35. Although Mr. Prado prevailed before the Ethics Committee of the Florida Bar, this unfortunate process delayed his admission to the practice of law in the State of Florida for more than 9 months, caused him grave emotional distress and suffering, required the investment of substantial financial resources, and resulted in him missing out on many potentially lucrative opportunities in Florida.

## **FIRST CLAIM FOR RELIEF**
*Negligence*

36. The allegations in all preceding paragraphs are realleged as if fully incorporated herein.

37. By accepting payment from Mr. Prado, the defendants assumed a duty to deliver to the Florida Board of Bar Examiners the answers provided by him during the examination and to correctly record the time expended by Mr. Prado in completing the essay portion of the examination.

38. The defendants owed a duty to Mr. Prado to use and exercise reasonable and due care in the creation and maintenance of the infrastructure for ExamSoft's software, including the website, servers, and other components necessary to obtain the correct time spent by Mr. Prado during the exam. They also had the responsibility to examine the results of their activity software to ensure their accuracy prior to leveling claims that Mr. Prado had exceeded the allotted time for the completion of the essay portion.

39. The defendants breached their duties by failing to adequately design, maintain, monitor, update, or improve its system and, as a result, Mr. Prado was falsely accused of cheating on the essay portion of the examination by allegedly exceeding the time limit for the examination by 1 minute and 4 seconds.

40. The defendants knew or, with the reasonable exercise of due care, should have known of the inherent risks that come with running the ExamSoft software and the internal errors that the system could generate, which would undermine the accuracy of its results.

41. The defendants' carelessness and negligent conduct directly caused Mr. Prado to suffer emotional distress and pecuniary harm.

42. Mr. Prado is entitled to a judgment for compensatory and punitive damages, costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

43. Mr. Prado's damages stem from the payment made to ExamSoft for the use of the software, the payment of the expert to investigate the cheating allegations, the payment of legal fees related to his defense before the Ethics Committee of the Florida Bar, the loss of earnings as a result of the 9-month delay to be admitted into the Florida Bar, emotional suffering, and the damages to Mr. Prado's honor and reputation.

## SECOND CLAIM FOR RELIEF
*Product Liability*

44. The allegations in all preceding paragraphs are realleged as if fully incorporated herein.

45. Mr. Prado used ExamSoft's software in the manner that it was intended to be used or in a manner that the defendants could have reasonably expected a person to use the product.

46. The defendants' software was defectively designed, defectively manufactured, or did not contain adequate instructions or warnings to ensure its proper use. The defendants failed to create or maintain the proper infrastructure for ExamSoft's software, including the website, servers, and other components necessary to obtain the correct time spent by Mr. Prado during the exam.

47. As a direct and proximate result of the defective software and the defendants' actions, Mr. Prado experienced emotional distress and pecuniary harm.

48. Mr. Prado is entitled to a judgment for compensatory and punitive damages, costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

49. Mr. Prado's damages stem from the payment made to ExamSoft for the use of the software, the payment of the expert to investigate the cheating allegations, the payment of legal fees related to his defense before the Ethics Committee of the Florida Bar, the loss of earnings as a result of the 9-month delay to be admitted into the Florida Bar, emotional suffering, and the damages to Mr. Prado's honor and reputation.

## **THIRD CLAIM FOR RELIEF**
*Breach of Contract*

50. The allegations in all preceding paragraphs are realleged as if fully incorporated herein.

51. In order to download and use the defendants' software, Mr. Prado entered into a valid and binding contract whereby he paid the defendants monetary consideration and the defendants had a duty to provide a reliable software system that would provide reliable time results for the examination.

52. Mr. Prado fully performed his obligations under the contract by paying the fee required by ExamSoft to use its system and software. Additionally, Mr. Prado complied with all conditions precedent and followed all ExamSoft's installation and use instructions.

53. The defendants materially breached this contract by failing to provide a software that provided reliable time results for the examination. Additionally, the defendants failed to sufficiently examine the software results to eliminate the possibility of error before informing the FBE and Mr. Prado that he had exceeded the allotted time for the test.

54. As a direct and proximate result of the defendants' bad faith, misconduct, and breach of contract, Mr. Prado suffered substantial damages and emotional distress.

55. Mr. Prado is entitled to a judgment for compensatory and punitive damages, costs, prejudgment interest, attorneys' fees, and any other relief the court deems equitable and just under the circumstances.

56. Mr. Prado's damages stem from the payment made to ExamSoft for the use of the software, the payment of the expert to investigate the cheating allegations, the payment of legal fees related to his defense before the Ethics Committee of the Florida Bar, the loss of earnings as a result of the 9-month delay to be admitted into the Florida Bar, emotional suffering, and the damages to Mr. Prado's honor and reputation.

## FOURTH CLAIM FOR RELIEF

*Unjust Enrichment*

57. The allegations in all preceding paragraphs are realleged as if fully incorporated herein.

58. Mr. Prado affirmatively alleges that the defendants have been unjustly enriched by charging and collecting a fee for providing reliable software and support while failing to do so.

59. If the legal claims addressed herein are found to be unavailable, then there is no adequate remedy at law.

60. Mr. Prado conferred a benefit upon the defendants by way of payment for their services. The defendants knowingly profited from the sale or licensing of its software to Mr. Prado. The defendants received and retained money belonging to Mr. Prado because of its unlawful conduct described herein. The defendants appreciate or have knowledge of the benefit conferred upon them by Mr. Prado.

61. Under principles of equity, the defendants should not be permitted to retain payment or profit from the unlawful conduct described herein.

62. Mr. Prado has experienced emotional distress and pecuniary harm as a direct result of the defendants' unlawful conduct.

63. Mr. Prado is entitled to a judgment for compensatory and punitive damages, costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

64. Mr. Prado's damages stem from the payment made to ExamSoft for the use of the software, the payment of the expert to investigate the cheating allegations, the payment of legal fees related to his defense before the Ethics Committee of the Florida Bar, the loss of earnings as a result of the 9-month delay to be admitted into the Florida Bar, emotional suffering, and the damages to Mr. Prado's honor and reputation.

## **FIFTH CLAIM FOR RELIEF**

*Florida Deceptive and Unfair Trade Practices Act*

65. The allegations in all preceding paragraphs are realleged as if fully incorporated herein.

66. On its website and in connection with consumers downloading the software, ExamSoft falsely advertised its software as reliable and as a trusted platform for administering bar examinations.

67. Mr. Prado's experience demonstrates that the software is defective and will lead to distorted results that indicate that a test taker exceeded their allotted exam time. Further, the support, maintenance, and troubleshooting systems in place for the software are inadequate as they were unable to realize that the software incorrectly interpreted that Mr. Prado exceeded the allotted time on the exam.

68. The defendants knew, or in the exercise of reasonable diligence, should have known, that these statements and actions were deceptive, unconscionable, or unfair.

69. The defendants made these statements for the purpose of selling property and intended that boards of bar examiners and test takers alike would rely on these representations by using and purchasing their software.

70. These statements and actions were likely to mislead an objective consumer acting reasonably considering the circumstances.

71. Mr. Prado did in fact rely upon these statements, and such reliance was reasonable and justified, given ExamSoft's self-professed reputation for reliability.

72. As a result of his reliance on the defendants' misrepresentations, Mr. Prado experienced emotional distress and pecuniary harm.

73. Mr. Prado is entitled to a judgment for compensatory and punitive damages, costs, prejudgment interest, attorneys' fees, and any other relief the court deems equitable and just under the circumstances.

74. Mr. Prado's damages stem from the payment made to ExamSoft for the use of the software, the payment of the expert to investigate the cheating allegations, the payment of legal fees related to his defense before the Ethics Committee of the Florida Bar, the loss of earnings as a result of the 9-month delay to be admitted into the Florida Bar, emotional suffering, and the damages to Mr. Prado's honor and reputation.

## SIXTH CLAIM FOR RELIEF

*Misleading Advertising*

75. The allegations in all preceding paragraphs are realleged as if fully incorporated herein.

76. On its website and in connection with consumers downloading the software, ExamSoft falsely advertised its software as reliable and as a trusted platform for administering bar examinations. These statements and actions were likely to mislead an objective consumer acting reasonably considering the circumstances.

77. Mr. Prado's experience demonstrates that the software is defective and will lead to distorted results that indicate that a test taker exceeded their allotted exam time. Further, the support, maintenance, and troubleshooting systems in place for the software are inadequate as they were unable to realize that the software incorrectly interpreted that Mr. Prado exceeded the allotted time on the exam.

78. The defendants knew that these statements and actions were false, deceptive, unconscionable, or unfair. The defendants knew that the software had imperfections, bugs, or glitches that could interfere with the proper gathering of information.

79. The defendants made these material misrepresentations intentionally for the purpose of inducing others to purchase the software and intended that boards of bar examiners and test takers alike would rely on these representations by using and purchasing their software.

80. Mr. Prado did in fact rely upon these statements, and such reliance was reasonable and justified, given ExamSoft's self-professed reputation for reliability.

81. As a result of his reliance on the defendants' misrepresentations, Mr. Prado experienced emotional distress and pecuniary harm.

82. Mr. Prado is entitled to a judgment for compensatory and punitive damages, costs, prejudgment interest, attorneys' fees, and any other relief the court deems equitable and just under the circumstances.

83. Mr. Prado's damages stem from the payment made to ExamSoft for the use of the software, the payment of the expert to investigate the cheating allegations, the payment of legal fees related to his defense before the Ethics Committee of the Florida Bar, the loss of earnings as a result of the 9-month delay to be admitted into the Florida Bar, emotional suffering, and the damages to Mr. Prado's honor and reputation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, in view of foregoing, the plaintiff respectfully requests and prays for judgement in his favor against the defendants as follows:

A. Ordering the defendants to pay compensatory and punitive damages;

B. Ordering the defendants to pay costs, prejudgment interest, and attorneys' fees; and

C. Ordering any further relief that the court deems equitable and just under the circumstances.

**RESPECTFULLY SUBMITTED** in Orlando, Florida, on this 21th day of July, 2020.

*s/ Manuel Franco, Esq.*
Attorney at Law
513 W. Colonial Dr. Unit 5
Orlando, FL 32804
Florida Bar No. 126443
(407) 420-7926
(787) 977-1411
Manuel.Franco.Law@gmail.com